# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CYNTHIA ZURCHIN, )
)
               Plaintiff, )
)    Civil Action No. 17-836
         v. )
)    Hon. Nora Barry Fischer
AMBRIDGE AREA SCHOOL DISTRICT, )
et al., )
)
            Defendants. )

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion to Dismiss and supporting brief filed by Defendants Robert Keber, Roger Kowal, and Kimberly Locher. (Docket Nos. 21, 22). Plaintiff has filed a response in opposition, to which Defendants replied. (Docket Nos. 30, 33). Also pending before the Court is a Motion to Dismiss and supporting brief filed by Defendant Megan Mealie. (Docket Nos. 24, 25). Plaintiff has filed a response in opposition, to which Mealie replied. (Docket Nos. 31, 32). After careful consideration of the parties' submissions; the allegations contained in Plaintiff's Complaint, (Docket No. [1]); the standards governing motions to dismiss set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and as articulated in Third Circuit precedent, *see, e.g.*, *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016); and for the following reasons, Defendants Keber, Kowal, and Locher's Motion to Dismiss, (Docket No. [21]), is GRANTED, in part, and DENIED, in part, without prejudice to the parties renewing their arguments at the motion for summary

judgment stage of this matter, and Defendant Mealie's Motion to Dismiss, (Docket No. [24]), is GRANTED, in part, and DENIED, in part, without prejudice to Defendant Mealie renewing her arguments at the motion for summary judgment stage of this matter.

## II. Background

In her Complaint, Plaintiff alleges the following relevant facts, which the Court accepts as true for the purpose of deciding the pending motions to dismiss.

Plaintiff was hired as the Superintendent of Ambridge Area School District ("AASD") on March 20, 2013. (Docket No. 1 at ¶ 29). At the time of her hiring, several school board members opposed her selection and preferred to hire a male candidate who was a high school principal from the area. (*Id.* at ¶ 31). As a consequence of Plaintiff's hiring over the male candidate, Defendants Roger Kowal and Brian Padgett began a targeted retaliatory campaign to foster a hostile working environment and recruited other board members to further their discriminatory objective. (*Id.* at ¶¶ 36-37). The pattern of retaliation and creation of a hostile work environment was consistent and pervasive from the outset of Plaintiff's employment. (*Id.* at ¶ 39).

During a board meeting on June 12, 2013, Defendant Padgett screamed, "You mother fucker, you better watch yourself. I will go after you. You better watch yourself, you mother fucker," and "I will get you," at Plaintiff. (*Id.* at ¶¶ 42-44). Defendant Padgett was subdued by other board members, who separated him from Plaintiff. (*Id.* at ¶ 46). Defendant Kowal laughed during the threat and thereafter. (*Id.* at ¶ 47). After Plaintiff filed a police report on June 13, 2013, Defendant Padgett was charged with harassment and terroristic threats. (*Id.* at ¶ 51). After word circulated that Defendant Padgett was going to shoot Plaintiff at a future board meeting, police were present at subsequent board proceedings. (*Id.* at ¶¶ 52-53). Defendant Padgett concluded

his term on the school board in November 2013 and pled guilty to the harassment charges in July 2014 after Plaintiff refused to withdraw the criminal complaint. (*Id.* at ¶¶ 54-56). After Defendant Padgett entered his plea, Defendant Kowal informed Plaintiff, "I will ruin you if it's the last thing I do; if it means ruining this school district." (*Id.* at ¶ 57). Concerted activity was thereafter undertaken by Defendants Kowal, Badgett, and Mealie for the purpose of causing harm to Plaintiff's professional reputation and employment. (*Id.* at ¶ 59). For example, Plaintiff was publicly and falsely accused of running a meth lab and engaging in Satanic worship. (*Id.* at ¶ 62). Defendants engaged in a deliberate, malicious, and ongoing pattern of abusive and threatening behavior to cause Plaintiff physical, emotional, and economic harm. (*Id.* at ¶ 63).

In September 2014, School Resource Officer Nate Smith mistreated and restrained without authorization J.H., an African American student with a documented disability. (*Id.* at ¶ 67). Based upon video surveillance and school policy, Plaintiff reported that incident to the Pennsylvania Department of Education, Bureau of Special Education, as an improper restraint and requested that the local police department remove Smith from his role as a School Resource Officer. (*Id.* at ¶¶ 68-74). After Defendant Kowal informed the police chief that he should not heed Plaintiff's concerns, Smith remained on school grounds. (*Id.* at ¶¶ 75-77). When Plaintiff suggested offering a summer school graduation ceremony for students with special needs, Defendant Locher stated, "Fuck those kids." (*Id.* at ¶¶ 77-78). Several board members directly interfered with Plaintiff's attempts to satisfy the rights of special needs students in an effort to force her resignation through an oppressive and retaliatory work environment. (*Id.* at ¶¶ 80-82).

In March 2015, Plaintiff advised the board that she had received a report that school district funds were being stolen by the Baden tax collector. (*Id.* at ¶ 83). Defendant Kowal, a personal friend of the auditors serving the district and tax collector, became defensive, verbally abusive,

and challenged Plaintiff's need to report the information. (*Id.* at ¶¶ 84-86). The tax collector was convicted in federal court of mail fraud and filing false income tax returns. (*Id.* at ¶ 87). Plaintiff's report was met with animosity and hostility to create an oppressive work environment to compel her to resign or be terminated. (*Id.* at ¶ 88).

Also, in March 2015, a teacher filed a complaint, alleging that Defendant Mealie was subjecting her to sexual harassment by making unwelcome visits to her home. (*Id.* at ¶¶ 89-90). The teacher turned over sixty pages of text messages demonstrating that the harassment had occurred. (*Id.* at ¶ 91). Plaintiff suspended Defendant Mealie pending an investigation and participated as a witness in the district's independent investigation. (*Id.* at ¶¶ 92-93). In addition to revealing sexual harassment by Defendant Mealie, the text messages between February and March 2015 illustrated collusion between board members and Defendant Mealie to create a hostile work environment for Plaintiff, an intent to physically harm Plaintiff, a desire to effectuate Plaintiff's discharge, and malice. (*Id.* at ¶¶ 94-97).

In July 2015, Plaintiff was denied a 2% pay increase, after all other active administrators were given a 2% pay increase and one-time bonuses ranging from $1,000 to $2,000. (*Id.* at ¶¶ 98-99). Defendant Locher indicated that the board would not give raises to any individual who had not yet had an evaluation. (*Id.* at ¶ 101). Pursuant to school district policy and the terms of Plaintiff's employment contract, the board was required to perform her annual evaluation prior to the end of the school year. (*Id.* at ¶¶ 102-103). By refusing to perform the evaluation, the board denied Plaintiff an increase which she was otherwise due. (*Id.* at ¶ 104). Additionally, the board interfered with Plaintiff's ability to attend educational conferences and required her to exhaust vacation days to attend same, despite conference attendance being permitted under the terms of her contract. (*Id.* at ¶ 105).

On October 12, 2015, Defendant Keber told custodial staff members that if they came to a special board meeting and looked up, they would see Plaintiff with her head in a noose hanging from the bridge. (*Id.* at ¶ 109). Thereafter, the board members engaged in intensifying public actions to foment public antipathy toward Plaintiff. (*Id.* at ¶ 110). After outlining Defendants' actions and text messages between June 2013 and October 2015, Plaintiff alleges that she was hospitalized for stroke-like symptoms. (*Id.* at ¶¶ 112-117). As a result of Defendants' conduct, Plaintiff was diagnosed with post-traumatic stress disorder, anxiety, and depression, requiring her to take medical leave. (*Id.* at ¶¶ 119-120). The medical leave, which commenced less than twenty-four hours after Defendant Keber's noose comment, was extended, and Plaintiff was ultimately not released to return to work. (*Id.* at ¶¶ 121-122).

Plaintiff asserts nine claims against Defendants. (*Id.* at ¶¶ 123-236). Relevant to the pending motions to dismiss, Plaintiff asserts the following claims: (1) a claim for sex discrimination and retaliation at Count III against Defendants AASD, Keber, Kowal, Locher, and Padgett, (*id.* at ¶¶ 147-153); (2) a claim pursuant to 42 U.S.C. § 1983 at Count IV against all Defendants, (*id.* at ¶¶ 154-164); (3) a claim pursuant to 42 U.S.C. § 1985 at Count VI against Defendants Keber, Kowal, Locher, Mealie, and Padgettt, (*id.* at ¶¶ 179-191); and (4) a claim for tortious interference with contractual relations at Count VIII against Defendants Keber, Kowal, Locher, Mealie, and Padgett, (*id.* at ¶¶ 204-220).

### III. Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (*Iqbal*, 556 U.S. at 679).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 556-57; *Iqbal*, 556 U.S. at 678.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "'a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. Discussion

### A. Count III — Sex Discrimination and Retaliation (PHRA)

As to Count III, Defendants Keber, Kowal, and Locher argue that Plaintiff's claim fails for four reasons. First, Defendants assert that they are not "employers" under the PHRA. (Docket No. 22 at 7-8). It is well settled that "[w]hile . . . . Title VII does not permit individual liability, the PHRA does provide for individual liability in cases where a person aids and abets acts of discrimination." *Clinkscales v. Children's Hosp. of Phila.*, No. 06-CV-3919, 2007 U.S. Dist. LEXIS 83930, at *24 (E.D. Pa. Nov. 9, 2007) (citing 43 Pa.C.S. § 955(e)). "[T]he Third Circuit has distinguished between coworkers, who cannot be held liable under section 955(e), and supervisors, who can be held liable under that section. *Id.* at *25 (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996); *Destefano v. Henry Michell Co.*, No. 99-CV-5501, 2000 U.S. Dist. LEXIS 6073, at *7 (E.D. Pa. Apr. 13, 2000) ("Courts have distinguished between nonsupervisory and supervisory employees, and imposed liability only on the latter, on the theory that supervisory employees can share the discriminatory intent and purpose of the employer.")).

Here, Plaintiff has alleged that the individual defendants held voting authority to undermine her and that they acted with the purpose and intent to discriminate against her based upon her gender. At this initial stage of the litigation, the Court finds that Plaintiff has sufficiently alleged facts to state a claim for relief under 43 Pa.C.S. § 955(e). *See id.* (holding that the plaintiff's pleading was sufficient); *Lantz v. Waynesboro Area Sch. Dist.*, No. 16-CV-224, 2016 U.S. Dist. LEXIS 142243, *17 (M.D. Pa. Oct. 14, 2016) (holding that the plaintiff had sufficiently stated a

claim under 43 Pa.C.S. § 955(e) by alleging that the individual defendants "acted with the purpose and intent to discriminate against her because of her gender"); *Kern v. Schuylkill Intermediate Unit 29*, No. 08-CV-1601, 2010 U.S. Dist. LEXIS 3216, *25-26 (M.D. Pa. Jan. 15, 2010) (denying motion to dismiss a claim under 43 Pa.C.S. § 955(e) where the plaintiffs alleged that the defendant was involved in direct incidents of illegal discriminatory conduct).

In its reply, Defendants Keber, Kowal, and Locher argue that Count III must be dismissed because Plaintiff did not cite to 43 Pa.C.S. § 955(e) in her Complaint or in her charge of employment discrimination before the Equal Employment Opportunity Commission. (Docket No. 33 at 2-3, 5). The Court finds Defendants' argument meritless, as their names are included in Plaintiff's administrative charge. (Docket No. 22-4). "Naming [Defendants] in the body of the charge satisfies the exhaustion of administrative remedies requirement." *Hitchens v. Greater Pittsburgh Cmty. Food Bank*, No. 06-CV-792, 2006 U.S. Dist. LEXIS 80999, at *8-9 (W.D. Pa. Oct. 23, 2006) (declining to dismiss claim where the plaintiff sought to hold the defendant liable under 43 Pa.C.S. § 955(e)); *see also Zarazed v. Spar Mgmt Services, Inc.*, No. 05-CV-2621, 2006 U.S. Dist. LEXIS 3302, at *20 (E.D. Pa. Jan. 26, 2006) ("An allegation naming a particular individual in the body of the charge has been enough to amount to exhaustion of administrative remedies."). Defendants Keber, Kowal, and Locher also reiterate their arguments that they were not supervisory employees. (Docket No. 33 at 3-5). Without providing case authority, Defendants assert that school board members do not have individual supervisory power. (*Id.* at 4-5). For the reasons discussed above, the Court concludes that, at this early stage of the litigation, Plaintiff has pled sufficient facts to state a claim for relief under 43 Pa.C.S. § 955(e). *See, e.g.*, *Clinkscales*, 2007 U.S. Dist. LEXIS 83930, at *26 (finding that "[w]hether or not Plaintiff will be able to prove that [the defendants] were supervisory employees," the plaintiff's allegations were sufficient at the

8

motion-to-dismiss stage); *McCleester v. Mackel*, No. 06-CV-120, 2008 U.S. Dist. LEXIS 27505, at *29 (W.D. Pa. Mar. 27, 2008) ("The question of whether a particular individual holds a 'supervisory position' over another must be answered by reference to the power that the individual actually holds, not by reference to his or her formal job title.").

Second, Defendants Keber, Kowal, and Locher contend that Count III must be dismissed because they did not take adverse employment actions against her. (Docket No. 22 at 8-10). "An adverse employment action is one that alters the terms, conditions or privileges of employment and includes actions that are more than trivial or minor changes in an employee's working conditions, such as suspension without pay and transfer to an undesirable position." *Williams v. Pa. Human Rels. Comm'n*, No. 14-CV-1290, 2016 U.S. Dist. LEXIS 160760, at *50 (W.D. Nov. 21, 2016) (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 331 (3d Cir. 2007)). Further, "[t]he law likewise makes actionable 'environmental claims' or 'hostile work environment claims' that because of their nature are said to alter the terms and conditions of employment." *Id.* Accepting Plaintiff's allegations as true, Plaintiff has sufficiently alleged facts demonstrating that she was subjected to a hostile work environment. *See, e.g.*, *Booker v. Nat'l R.R. Pass. Corp.*, 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (noting that "[c]ourts in this Circuit have . . . shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive."); *see also Petril v. Cheyney Univ. of Pa.*, 789 F. Supp. 2d 574, 579-81 (E.D. Pa. 2011) (denying motion to dismiss where the plaintiff alleged that ongoing harassment caused her to suffer a nervous breakdown that required hospitalization). Moreover, Plaintiff has alleged that she was denied a pay raise and was constructively discharged. *See, e.g.*, *Hileman v. Penelec/FirstEnergy Corp.*, No. 14-CV-1771, 2017 U.S. Dist. LEXIS 99106, *20 (M.D. Pa. June 27, 2017) ("Defendants' refusal

to increase Hileman's pay rate is arguably an economic harm constituting adverse employment action."); *Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 738 (W.D. Pa. 2010) (stating that "a failure to promote and a constructive discharge are ways in which a plaintiff can prove an 'adverse employment action' or a 'tangible employment action'" under the PHRA).

Third, Keber, Kowal, and Locher maintain that Count III must be dismissed because Plaintiff has failed to state a viable hostile work environment claim. (Docket No. 22 at 10-15; Docket No. 33 at 5-7). In this Court's estimation, as discussed, Plaintiff has sufficiently alleged facts demonstrating that she was subjected to a hostile work environment. To this end, to establish a hostile work environment under the PHRA, Plaintiff must demonstrate that: (1) she suffered intentional discrimination because of her gender; (2) the harassment was severe or pervasive and regular; (3) the harassment detrimentally affected her; (4) the harassment would detrimentally affect a reasonable person of the same protected class; and (5) the harasser was a supervisory employee or agent. *Brooks v. CBS Radio*, No. 07-CV-519, 2007 U.S. Dist. LEXIS 92213, at *31 (E.D. Pa. Dec. 17, 2007). As detailed by the Court, Plaintiff has alleged a multitude of incidents involving harassment by Defendants.[1] Further, as previously explained, the Court declines to determine whether Defendants are supervisory employees at this stage of the proceedings. *See, e.g.*, *Clinkscales*, 2007 U.S. Dist. LEXIS 83930, at *26; *McCleester*, 2008 U.S. Dist. LEXIS 27505, at *29 ("The question of whether a particular individual holds a 'supervisory position' over another must be answered by reference to the power that the individual actually holds, not by

---

[1] In support of their argument, Defendants attach meeting minutes dated March 20, 2013. (Docket No. 22 at 12-13; *see also* Docket No. 22-1). It is well settled that "[i]n adjudicating Rule 12(b)(6) motions, the court may consider 'only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 478 (W.D. Pa. 2012) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004)).

reference to his or her formal job title."); *see also Booker*, 880 F. Supp. 2d at 582; *Brooks*, 2007 U.S. Dist. LEXIS 92213, at *34 ("Our Court of Appeals has cautioned that in considering whether a plaintiff has established the elements of a hostile work environment, 'the record must be evaluated as a whole to decide whether the plaintiff has proved his or her case.'") (quoting *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001)).[2]

Fourth, Defendants Keber, Kowal, and Locher argue that Count III must be dismissed because Plaintiff has failed to state a viable retaliation claim. (Docket No. 22 at 15-18; Docket No. 33 at 7-9). Defendants assert that Plaintiff failed to timely file her retaliation claim with the Equal Employment Opportunity Commission ("EEOC"). (Docket No. 22 at 16-17). As Plaintiff has noted, District Courts within the Third Circuit have held that where constructive discharge is included as an adverse employment action, the PHRA's 180-day statute of limitations begins to run on the date the constructive discharge is effectuated. *See, e.g.*, *Stremple v. Nicholson*, No. 01-CV-890, 2006 U.S. Dist. LEXIS 41885, 2006 WL 1744316, at *14-15 (W.D. Pa. June 22, 2006) (holding that the limitations period on the plaintiff's constructive discharge claim began to run when he gave notice of his retirement); *Graham v. Avella Area Sch. Dist.*, No. 05-CV-1344, 2006 U.S. Dist. LEXIS 39258, at *11 (W.D. Pa. June 14, 2006) (determining that the plaintiff's constructive discharge claim accrued when she gave definite notice of her intention to retire); *see also Ilori*, 742 F. Supp. 2d at 753 (concluding that the plaintiff's constructive discharge claim was

---

[2] Defendants also assert that Plaintiff failed to exhaust her administrative remedies with respect to her hostile work environment allegations against Defendants Locher and Kowal. (Docket No. 22 at 14-15). As previously noted, Plaintiff has exhausted her administrative remedies. *Hitchens*, 2006 U.S. Dist. LEXIS 80999, at *8-9; *Zarazed*, 2006 U.S. Dist. LEXIS 3302, at *20; *see also Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999) ("[I]f the allegations made in the complaint filed in this Court could be 'reasonably expected to grow out of' those contained made in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss, as the administrative remedies available to the plaintiff will have been exhausted.") (quoting *Page v. EEC Mgmt. Servs.*, No. 97-CV-2654, 1997 U.S. Dist. LEXIS 19547, at *8 (E.D. Pa. Dec. 8, 1997)).

timely because both his last day of work and the date of his first letter of resignation fell within the limitations period). Here, Plaintiff commenced her medical leave on October 13, 2015. (Docket No. 1 at ¶¶ 109, 121-122). Plaintiff initiated the EEOC action on December 22, 2015, well within the PHRA's statute of limitations. (*Id.* at ¶¶ 19-20). Thus, the Court finds that Plaintiff's claim is timely.

Defendants also contend that Plaintiff has failed to state a viable retaliation claim because she did not engage in any protected activity, Defendants Locher and Kowal did not take adverse action against Plaintiff, and there is no causal connection between Plaintiff's protected activity and the alleged adverse actions. (Docket No. 22 at 16-18; Docket No. 33 at 7-9). To establish a prima facie case of retaliation under the anti-discrimination statutes, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). To satisfy the PHRA's protected activity requirement, a plaintiff must demonstrate discrimination "because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 P.S. § 955(d). The first clause is known as the opposition clause, and the second is known as the participation clause. *Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 443 (M.D. Pa. 2009).

In her Complaint, Plaintiff alleges that she opposed the mistreatment of J.H., an African American student with a documented disability, and requested that Smith be removed as a School Resource Officer. (Docket No. 1 at ¶¶ 67-74). Accepting Plaintiff's allegations as true, the Court finds that her actions fall under the opposition clause. *See, e.g.*, *Mathis v. Christian Heating & Air*

12

*Conditioning, Inc.*, 158 F. Supp. 3d 317, 334 (E.D. Pa. 2016) (noting that opposition to an illegal employment practice "can include 'informal protests of discriminatory employment practices, including making complaints to management'") (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  Plaintiff also alleges that she participated in the investigation of a sexual harassment complaint against Mealie and suspended Mealie pending the results of the investigation.  (Docket No. 1 at ¶¶ 92-93).  Again accepting Plaintiff's allegations as true, the Court concludes that her participation in the investigation falls within the participation clause.  *See, e.g.*, *Tuthill v. Conrail*, No. 96-CV-6868, 1997 U.S. Dist. LEXIS 13304, at *9 (E.D. Pa. Aug. 26, 1997) ("In order to establish a claim under the 'participation clause,' the investigation, proceeding or hearing must fall within the confines of the procedures set forth in Title VII."); 42 U.S.C. § 2000e-3(a) (prohibiting employers from retaliating for participation "in an investigation, proceeding, or hearing under this title"); *id.* § 2000e-2 (prohibiting sexual harassment).

For the reasons previously delineated, the Court rejects Defendants' contention that Locher and Kowal did not take adverse action against Plaintiff.  With respect to the element of causal connection, Defendants argue that Plaintiff's retaliation claim fails because Locher's alleged threat in June 2014 and Kowal's alleged threat in July 2014 occurred before Plaintiff attempted to remove Smith as a School Resource Officer.  (Docket No. 33 at 8-9).[3]  The Court finds meritless Defendants' argument because, as discussed above, the law makes actionable hostile work environment claims that because of their nature alter the terms and conditions of employment.

---

[3] Defendants initially argued that there was no causal connection between Plaintiff's involvement in the investigation of Mealie and Defendants' alleged adverse action.  (Docket No. 22 at 17-18).  In their reply, however, Defendants state that their argument relates only to Plaintiff's alleged protected activity with respect to her attempt to remove Smith as a School Resource Officer.  (Docket No. 33 at 8-9).

*Williams*, 2016 U.S. Dist. LEXIS 160760, at *50. Further, the only case law upon which Defendants rely relates to the summary judgment stage of proceedings. (*See* Docket No. 33 at 8-9 (citing *Flory v. Pinnacle Health Hosps.*, 346 F. App'x 872 (3d Cir. 2009); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007)).

Accordingly, for the foregoing reasons, the Court will deny Defendants Keber, Kowal, and Locher's motion to dismiss Count III, without prejudice to the parties renewing their arguments at the motion for summary judgment stage of this matter.

B.  Count IV — 42 U.S.C. § 1983

As to Count IV, Defendants Keber, Kowal, and Locher argue that Plaintiff's claim is redundant because she has sued them in their official capacities in addition to having sued AASD. (Docket No. 22 at 18-19). In response, Plaintiff states that her claim is "against the district and only select individual board members" and clarifies that she "did not sue the district and the school board collectively." (Docket No. 16 at 30). In their reply, Defendants Keber, Kowal, and Locher agree with Plaintiff and state that "the *official* capacity claims (but not the *individual* capacity claims) asserted against them should be dismissed with prejudice as duplicative." (Docket No. 33 at 9 (emphasis in original)).

"Where individual defendants are named in their official capacities, only the liability of the agency which the officers represent is really at issue." *McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638 n.18 (1980); *Melo v. Hafer*, 912 F.2d 628 (3d Cir. 1990)). The Court finds that "there is no reason to continue the claims against the individual defendants in their official capacities: those defendants are already potentially liable in their personal capacities, and the potential liability of the school district and school board for the claims

14

against them makes the official capacity actions needlessly duplicative." *Id.* Thus, the Court will grant Defendants' motion to dismiss Count IV to the extent that Plaintiff asserts her claim against Defendants in their official capacity. *Id.* (granting motion to dismiss official capacity actions against individual defendants but stating that "[t]hese individuals remain defendants in the case, however, because of their potential liability in their personal capacities").

Defendant Mealie argues that Count IV must be dismissed because she was Plaintiff's subordinate. (Docket No. 25 at 6-8; Docket No. 32 at 2-4). She asserts that she was an Assistant to the Superintendent, that she was not Plaintiff's supervisor, and that Plaintiff was empowered by her position to discipline her. (Docket No. 25 at 8). It is well settled that "[t]he question of whether a particular individual holds a 'supervisory position' over another must be answered by reference to the power that the individual actually holds, not by reference to his or her formal job title." *McCleester v. Mackel*, No. 06-CV-120, 2008 U.S. Dist. LEXIS 27505, at *29 (W.D. Pa. Mar. 27, 2008). Further, "[t]he issue of supervisory authority is a question of fact," as "[a] de facto supervisor who lacks the power to terminate a subordinate's employment may nevertheless abuse his or her power with respect to that subordinate, and may even constructively discharge that subordinate, so long as he or she exercises some authority over him or her." *Id.* (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 240 (3d Cir. 2006)). Plaintiff has alleged, inter alia, that text messages between the board members and Defendant Mealie illustrate collusion between the board members and Defendant Mealie to create a hostile work environment for Plaintiff, an intent to physically harm Plaintiff, a desire to effectuate Plaintiff's discharge, and malice. (Docket No. 1 at ¶¶ 94-97). Accordingly, the Court denies Defendant Mealie's motion to dismiss Count IV, without prejudice to her renewing her arguments at the summary judgment stage of this matter.

C.  Count VI — 42 U.S.C. § 1985(3)

As to Count VI, Defendants Keber, Kowal, Locher, and Mealie argue that Plaintiff's claim fails because her allegations are conclusory, they are entitled to qualified immunity, and they are agents of AASD.  (Docket No. 22 at 20-21; Docket No. 25 at 9-15; Docket No. 32 at 4-7; Docket No. 33 at 5-7).  The Court need not address the parties' arguments, as it is well settled that 42 U.S.C. § 1985(3) "may not be invoked to redress violations of Title VII." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).  Indeed, in applying *Novotny*, this Court explained that "the Supreme Court determined that Title VII's enforcement scheme could not be bypassed via § 1985(3)." *Williams v. Pa. Human Rels. Comm'n*, No. 14-CV-1290, 2016 U.S. Dist. LEXIS 160760, at *38 (W.D. Pa. Nov. 21, 2016), *aff'd*, 870 F.3d 294 (3d Cir. 2017).

Here, Plaintiff does not state that the conspiracy was based on alleged constitutional violations.  (Docket No. 1 at ¶¶ 179-191).  Rather, Plaintiff clearly avers that the alleged conspiracy was based upon a violation of Title VII.  (*See id.*).  Such allegations must be dismissed because "[a] plaintiff's rights under Title VII . . . may not be asserted within the remedial framework of § 1985(3)." *Reynolds v. Fed. Bureau of Prisons*, No. 09-CV-3096, 2010 U.S. Dist. LEXIS 71494, at *12 (E.D. Pa. July 14, 2010) (citing *Novotny*, 442 U.S. at 378)); *see also Jarvis v. Analytical Lab. Servs.*, No. 12-CV-574, 2012 U.S. Dist. LEXIS 76869, at *38-39 (W.D. Pa. Apr. 9, 2012) (recommending that the plaintiff's 42 U.S.C. § 1985(3) claim be dismissed because he had clearly averred that the conspiracy was based upon a violation of Title VII); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 668 (M.D. Pa. 2009) (dismissing 42 U.S.C. § 1985(3) claim where the plaintiff argued that the defendants "conspired to violate her rights under Title VII"); *Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 387 n.10 (M.D. Pa. 2001) (noting that "the ADEA cannot be the basis of a § 1983 or § 1985(3) claim, since otherwise a plaintiff could circumvent the

elaborate procedural and administrative requirements that Congress sought to make prerequisites to judicial action under the ADEA").  Because permitting Plaintiff to amend her claim would be futile, the Court finds that Count VI must be dismissed, with prejudice.  *See Jarvis*, 2012 U.S. Dist. LEXIS 76869, at *39-40 (recommending that the plaintiff's 42 U.S.C. § 1985(3) claim be dismissed, with prejudice, because it was based upon a violation of Title VII).

In dismissing Count VI, the Court further notes that Plaintiff's allegations are conclusory. To this end, a plaintiff must allege the following elements in order to state a claim pursuant to 42 U.S.C. § 1985(3):  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).  Thus, to state a claim under 42 U.S.C. § 1985(3), a plaintiff "must set forth facts from which a conspiratorial agreement between the defendants can be inferred."  *Parrott v. Abramsen*, 200 F. App'x 163, 165 (3d Cir. 2006).

Here, Plaintiff avers only that she is a member of a protected class and includes conclusory allegations with respect to a conspiracy.  (*See* Docket No. 1 at ¶¶ 179-191).  "[C]onclusory allegations of concerted action without facts actually reflecting such action may be insufficient to state a conspiracy claim."  *Pellegrino Food Prods. Co. v. City of Warren*, 136 F. Supp. 2d 391, 409-10 (3d Cir. 2000) (citing *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998)); *see also Sung Tran v. Delavau, LLC*, No. 07-CV-3550, 2008 U.S. Dist. LEXIS 39001, at *41-42 (E.D. Pa. May 13, 2008) (dismissing the plaintiff's 42 U.S.C. § 1985(3) claim because he failed to properly allege the existence of a conspiracy); *Rouse v. II-VI, Inc.*, No. 06-CV-566, 2007 U.S. Dist. LEXIS 23679, at *36 (W.D. Pa. Mar. 30, 2007) (dismissing the plaintiff's 42 U.S.C. § 1985(3) claim because he

failed to allege "any facts from which one could infer that the defendants had in fact conspired");
*Sayles v. Pennsylvania Dept. of Pub. Welfare*, 24 F. Supp. 2d 393, 398-99 (M.D. Pa. 1997)
(dismissing the plaintiffs' 42 U.S.C. § 1985(3) claim because they failed to provide "any factual
support of an agreement or communication of conspiracy" and "failed to bolster their broad-
ranging allegations of conspiracy with anything more than speculation and conjecture") (internal
quotations and alterations omitted). Accordingly, the Court grants Defendants' respective motions
to dismiss Count VI, with prejudice.

    D.  Count VIII — Tortious Interference With Contractual Relations

    As to Count VIII, Defendants Keber, Kowal, Locher, and Mealie argue that Plaintiff's
claim fails because they are entitled to immunity and they are agents of AASD. (Docket No. 22
at 21-22; Docket No. 25 at 16-17; Docket No. 32 at 7-8). To establish a claim for tortious
interference with contractual relations, a plaintiff must prove the following: (1) the existence of a
contractual relation between the complainant and a third party; (2) purposeful action on the part of
the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or
justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result
of the defendant's conduct. *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)
(quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)); *see also Birl
v. Philadelphia Elec. Co.*, 167 A.2d 472, 474 (Pa. 1960). "Fundamentally, the claim must be
directed against a defendant who is not party to the contractual relationship." *Forrest v. Owen J.
Roberts Sch. Dist.*, No. 09-CV-3014, 2011 U.S. Dist. LEXIS 34920, at *49 (E.D. Pa. Mar. 31,
2011) (citing *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001); *Nix v.
Temple Univ. of Commw. Sys. of Higher Educ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991)).
"[B]ecause a corporation acts through its agents and officers, those individuals are not considered

third parties to a contract when acting in their official capacities." *Id.* at *50 (citing *Avins v. Moll*, 610 F. Supp. 308, 318 (E.D. Pa. 1984); *Maier v. Maretti*, 671 A.2d. 701, 707 (Pa. Super. Ct. 1996)). "However, a corporation's employee can act as a third party when the employee was acting outside of the scope of employment." *Id.* (citing *Emerson Radio Corp.*, 253 F.3d at 173).

With respect to school board members' immunity, "'[a]n official's status as a high public official for purposes of absolute immunity is determined on a case-by-case basis, and depends on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions.'" *Graham*, 2006 U.S. Dist. LEXIS 39258, at *12 (quoting *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002)). However, "high public officials are entitled to absolute immunity from state law suits only when acting in their official capacities." *Id.* at *12-13. "School board members, 'entrusted with a policymaking role for the School District, are high public officials entitled to absolute immunity from state law suits when acting in their official capacities.'" *Id.* at *13 (quoting *Zugarek*, 214 F. Supp. 2d at 479). Thus, in accordance with well-established law, the Court will grant Defendants' motion to dismiss Count VII to the extent that Plaintiff asserts her claim against Defendants in their official capacity. *Id.*; *Forrest*, 2011 U.S. Dist. LEXIS 34920, at *50 ("[B]ecause a corporation acts through its agents and officers, those individuals are not considered third parties to a contract when acting in their official capacities.").

The Court finds, however, that Plaintiff has sufficiently alleged her claim as to Defendants' potential liability in their personal capacities. To this end, Plaintiff has alleged, inter alia, that Defendants maliciously and recklessly interfered with her contract by spreading false and unsubstantiated claims regarding her efficacy as superintendent. (Docket No. 1 at ¶¶ 204-220). Plaintiff's factual allegations as a whole, which the Court must accept as true at this stage of the proceedings, include Defendants' conduct as occurring outside the scope of activities that were in

connection with school district business. *See, e.g.*, *Afrika v. Khepera Charter Sch.*, 2017 U.S. Dist. LEXIS 38520, *16-17 (E.D. Pa. Mar. 16, 2017) (denying motion to dismiss because "[i]t remain[ed] an open question whether [a school board trustee] was operating within the scope of his authority"); *Hall v. Easton Area Sch. Dist.*, No. 10-CV-7603, 2012 U.S. Dist. LEXIS 20695, at *23-24 (E.D. Pa. Feb. 16, 2012) (denying motion to dismiss where the plaintiff alleged that the superintendent and director of human resources "acted with specific intent to harm her"); *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 395-96 (E.D. Pa. 2011) (denying motion to dismiss where the plaintiff alleged that the school board members acted "maliciously" to interfere with his contract by accusing him of violating the attendance policy, among other allegations); *Graham*, 2006 U.S. Dist. LEXIS 39258, at *13-14 (denying motion to dismiss where the plaintiff alleged that a school board member falsely accused her of having a sexual affair with a former principal and holding that the plaintiff may be able to prove that he was not entitled to immunity because his actions were beyond his official authority); *Wagner v. Tuscarora Sch. Dist.*, No. 04-CV-1133, 2005 U.S. Dist. LEXIS 45663, at *18-19 (M.D. Pa. Sept. 21, 2005) (denying motion to dismiss where the plaintiff alleged that the defendants provided false information about him and initiated false accusations against him). *Cf. Forrest*, 2011 U.S. Dist. LEXIS 34920, at *50-51 (granting motion to dismiss where the plaintiff's "averments [were] limited to activities either taken at official school district meetings or outside of meetings in apparent connection with school district business").

Accordingly, the Court will grant Defendants' respective motions to dismiss Count VIII to the extent that Plaintiff asserts her claim against Defendants in their official capacity. The Court will deny Defendants' respective motions in all other respects, without prejudice to Defendants renewing their arguments at the summary judgment stage of this matter.

## V.    Conclusion

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, Defendants Keber, Kowal, and Locher's Motion to Dismiss, (Docket No. [21]).  The Court GRANTS, in part, and DENIES, in part, Defendant Mealie's Motion to Dismiss, (Docket No. [24]).  An appropriate Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

cc/ecf:  All counsel of record